No. 25,784.

C. W. BEELER, *Appellant*, v. JOHN LIND et al., *Appellees.*

SYLLABUS BY THE COURT.

REPLEVIN—*Evidence—Instructions.* The proceedings in a replevin action considered, and *held*, (*a*) it was error to admit conversations had before and contemporaneous with the execution of a mortgage which tended to change its terms; (*b*) the instructions complained of did not fairly state the issues.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed April 11, 1925. Reversed.

*A. L. Moffat,* of Kinsley, for the appellant.
*Charles E. Davis,* of Cottonwood Falls, *Gilbert H. Frith,* and *Louis E. Clevenger,* both of Emporia, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one in replevin to recover possession of ninety-six steers claimed by the plaintiff under a chattel mortgage. At the commencement of the action the plaintiff obtained possession of seventy-four of the steers, sold them, and retained the proceeds. Lind answered, and also filed a cross petition asking judgment against Beeler for the value of the steers so taken. Trial to a jury resulted in a finding that the plaintiff was not entitled to the steers, and verdict for Lind on his cross petition for $6,290. Judgment was entered for the defendant on the verdict, and plaintiff appeals.

The facts are substantially as follows: Beeler resides at Kinsley. He owned 933 head of cattle, located on a ranch near Syracuse, and on October 23, 1922, sold them to E. B. Swayze, who owned a ranch

near Ashland. Swayze gave Beeler his note for $47,910 in payment (the full purchase price), secured by mortgage on the cattle. Swayze took the cattle to his ranch in Clark county, where they were intermingled with some 1,200 other cattle. Beeler recorded his mortgage in Clark county. February 18, 1923, Swayze sold 300 head of cattle to Lind and W. H. Hyle. The cattle were later cut out of the herd by a "straight cut." Two hundred were taken by Hyle and 100 by Lind. Lind paid Swayze in two checks, one for $1,000 and one for $5,850. Hyle paid in two checks, one for $3,000 and one for $10,748. Some days afterwards Beeler met Swayze in Kansas City. Swayze told Beeler he had sold 300 head—200 of Beeler's and 100 of his own. Beeler asked to whom the cattle were sold and for what price. Swayze replied that he had sold the cattle to Lind and Hyle, of Saffordville, for $68 per head. Beeler asked about the money. Swayze replied that he was on his way to Kinsley to check the matter over and make settlement, and he thereupon turned over to Beeler Hyle's check for $10,748. Some further conversation was had, in which Swayze stated that he had some money coming in in a few days and would send the balance to Beeler. Several weeks elapsed, when Beeler called Swayze over the phone and asked him to come to Kinsley and settle the difference on the sale of the cattle. Swayze went to Kinsley June 9, 1923. There is a conflict about what was said. Beeler says Swayze told him he was out the price of a carload of cake for the cattle, and Beeler agreed to stand part of the expense. They figured the price of 200 cattle at $68 per head, which, after deducting the Hyle check, left a balance due Beeler of about $2,800. Beeler agreed to take $2,000 and let the remainder go toward defraying the expense of the cake. Swayze had no money, but agreed to give Beeler his note for $2,000, secured by mortgage on some cows, heifers and calves. The note and mortgage were executed June 9, 1923. On July 9 Beeler went to Swayze's ranch, had the cattle rounded up and counted. It appeared that Swayze was about 88 head short. Swayze contended he was not. Beeler later investigated and found that 285 instead of 200 of the Beeler steers had been taken to Saffordville. He returned to the Swayze ranch, procured Mrs. Swayze's signature to the $2,000 mortgage, and then filed this action in replevin.

The original mortgage of $47,910 from Swayze to Beeler, among other things, provided:

"And it is further agreed that in case of a sale or disposal or attempt to

sell or dispose of the goods and chattels herein mortgaged, or a removal of or attempt to remove the same from the county aforesaid, or an unreasonable depreciation in value, or if from any cause the security shall become inadequate, or the party of the second part shall deem himself insecure, then and thenceforth it shall be lawful for the party of the second part, his heirs, executors, administrators or assigns, or his authorized agent, to enter upon the premises of the said party of the first part, or any other place or places wherein said goods and chattels aforesaid may be, to remove and dispose of the same."

Swayze alleged in his answer that at the time of the purchase of the cattle from Beeler it was agreed that Swayze should sell all or any part of the steers and pay Beeler for each lot sold the average price per head, and that Swayze should have credit on the $47,910 note and mortgage for the cattle sold and accounted for. He also alleged that he (Swayze) sold to Lind and Hyle 200 cattle bought of the plaintiff Beeler, and 100 of similar cattle owned by Swayze.

In the answer filed by Lind it was alleged that at the time of the sale of the steers by Swayze to Lind and Hyle, Swayze was acting as the agent of the plaintiff, he (Swayze) having been orally authorized to sell the same, and that the sale of said steers was in fact the act of his principal, the plaintiff, and that by said sale the mortgage on the steers so sold to these answering defendants was released. Also—

"Further answering, these defendants allege that after the sale of said steers by said Swayze to these defendants that said plaintiff was fully advised by said Swayze of all the facts and circumstances connected with said sale, and with knowledge of such facts accepted a portion of the proceeds thereof and some additional security and thereby ratified and confirmed the act of said Swayze in selling said steers."

To the defendant's answer and cross petition the plaintiff Beeler filed a verified reply.

Lind's defense was that Beeler authorized Swayze to sell the cattle and that he (Beeler), in accepting the $2,000 mortgage, had ratified the sale.

The plaintiff contends that the trial court erred in admitting evidence of the alleged authority given to Swayze to sell the cattle. The evidence objected to was of conversations had before and at the time of the sale of the cattle by Beeler to Swayze and the execution of the original purchase-price mortgage by Swayze to Beeler. Swayze testified:

"Q. At the time of the purchase of these cattle by you from Mr. Beeler, what was said by you or by him, in substance, as to the disposition of them, the sale of them?

"(Objected to as incompetent, irrelevant and immaterial. By the court: Overruled.)

"A. Well, sir, it was talked over before that, that I was to carry these cattle out to my ranch, take care of them, and the first man in Kansas, eastern Kansas, or anywhere, that I could sell them to in carload lots or better, that I had the privilege. There was several conversations. In fact, we were together, I expect, on this trade altogether three days, maybe longer; made one or two pretty long drives together. It was conceded between him and I that I was to take these cattle and take care of them and sell them either—well, within the terms of this mortgage."

A motion to strike out this testimony was overruled. The mortgage was executed in the afternoon or evening of the third day mentioned. The evidence should not have been admitted.

The plaintiff contends that the question of ratification should not have been submitted to the jury; that the issue was eliminated from the case by the answer and testimony of Swayze. Swayze's answer contained this language:

"Further answering, defendant states: That on the 18th day of February, 1923, he sold J. A. Lind and W. M. Hyle 300 head of cattle ranging on defendant's ranch in Clark county, Kansas, including, as nearly as could be determined by range count, 200 head of the cattle bought of plaintiff (Beeler) and 100 head of similar cattle owned by defendant."

Swayze testified that he had sold 300 head to Hyle and Lind, and that he claimed 100 of them were his cattle (not Beeler's). The record is convincing that, with the information that Swayze had sold 200 of the Beeler cattle and 100 of his own, Beeler and Swayze adjusted their differences at Kinsley on June 9, at which time Swayze gave Beeler his note for $2,000 secured by chattel mortgage on the cows and heifers—the same mortgage Mrs. Swayze afterwards signed when Beeler was at the Swayze ranch in July following. Swayze's testimony, however, was uncertain, confusing, conflicting. He made statements from which the inference could be drawn that the $2,000 mortgage was to cover whatever shortage there was in steers delivered to Lind and Hyle. In connection with her signing of the mortgage Mrs. Swayze testified:

"I remember in the month of July, 1923, having executed and signed a chattel mortgage covering some cows to Mr. Beeler. It was about the 27th or 28th of July, 1923. Mr. Beeler and Darl, my husband, were present when I signed the mortgage. I never signed a note; I signed only one place, and that was the chattel mortgage. I was not at that time, nor now, under any obligation to Mr. Beeler. I owe him nothing. I signed the mortgage at my husband's and Mr. Beeler's request. The mortgage covered my cattle branded SS. That is the only mortgage I signed, dated June 9, 1923. I signed it on

the 27th or 28th and for payment of $2,000. . . . Mr. Beeler took the mortgage from his pocket and said, 'Mrs. Swayze, I want you to sign this mortgage with Mr. Swayze, and it will fix up this little affair between Mr. Swayze and myself.' I don't believe I said anything in answer to that. I read the mortgage and Mr. Beeler handed me a pencil and I signed it, and Mr. Beeler thanked me for signing it and said that it fixed up this little affair between Mr. Swayze and I.' That was what he said, that it 'fixed up' (I am sure that was the expression he used) 'this little difference between Mr. Swayze and myself.' He said that made the mortgage all right.

*"Cross-examination:*

"I signed the chattel mortgage for $2,000 about the 27th of July, 1923. It was the chattel mortgage my husband had previously given to Mr. Beeler. It was signed at the ranch, twelve miles north of Ashland. My husband first approached me about this $2,000 mortgage and we talked the matter over between ourselves, without Mr. Beeler being present. . . . All I do remember is that Mr. Beeler requested me to sign this chattel mortgage and said it would fix up this little difference between my husband and Mr. Beeler.

"Q. After you signed the chattel mortgage, he of course told you that that made the mortgage good? A. Yes.

"Q. He was at that time talking about the $2,000 chattel mortgage? A. Yes.

"Q. You don't remember any other conversation about this chattel mortgage except what you have stated? A. No. All I knew about the shortage of the steers is what Darl told me. From what he told me, I signed the mortgage to fix up the difference between him and Mr. Beeler. Mr. Beeler didn't tell me what the differences were between him and Swayze. He said 'this little difference'; that is all."

It is clear from Mrs. Swayze's testimony that she and Beeler were talking about the $2,000 chattel mortgage which had been given to adjust the shortage on the 200 head of cattle—not the 85 head in excess of that number which Swayze sold to Lind and Hyle, and which are the subject of controversy here. Yet another inference may be drawn from her statement that from what her husband told her about the shortage of steers, she signed the mortgage. The inferences, though slight, drawn from the testimony of Mr. and Mrs. Swayze, when considered in connection with Lind's answer, were sufficient to require submission of the issue to the jury. On this issue the court instructed the jury:

"There is another angle to this case. Defendant pleads that after Beeler had notice of the sale to Lind, that Swayze and Beeler entered into a settlement by reason of certain note and chattel mortgage for $2,000 which was given by Swayze to cover the shortage of cattle that had been taken from the Beeler herd. The burden of proof is upon the defendant in this case to establish the fact, by a preponderance of the evidence, that Beeler knew of the sale of the cattle to Lind, and that, after knowing it, he accepted in satis-

faction this note and chattel mortgage for $2,000 for the payment of the shortgage of those cattle. If the defendant has established that fact by a preponderance of the evidence, then the defendant is entitled to a verdict in his behalf."

The instruction was misleading and prejudicial in that it failed to clearly state the issues. Doubtless the jury was led to believe that if Beeler accepted the $2,000 mortgage he ratified the sale of the 85 head of steers; whereas, it was Beeler's contention, and the evidence convincing, that the $2,000 mortgage was in payment of the balance due on the 200 head.

The plaintiff complains of the exclusion of two letters, one to Beeler by Marion T. Coggins, and the other Beeler's reply thereto. Swayze, over objection, was permitted to testify regarding a conversation with Beeler at Ford, Kan., after the filing of the action. The letters were in rebuttal to his testimony. The court should have rejected the Swayze testimony; but not having done so, should have permitted the plaintiff to offer testimony in rebuttal.

The judgment is reversed and the cause remanded with directions to grant a new trial.

Harvey, J., not sitting.